THE PEOPLE OF THE STATE OF NEW YORK ex rel. ELLA BEEBE, Appellant, *v.* THE WARDEN OF THE CITY PRISON OF THE BOROUGH OF MANHATTAN, CITY OF NEW YORK, et al., Respondents.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. LEAH VAN LINDA, Appellant, THE WARDEN OF THE CITY PRISON OF THE BOROUGH OF MANHATTAN, CITY OF NEW YORK, et al., Respondents.

*People ex rel. Beebe* v. *Warden, etc.*, 86 App. Div. 626, affirmed.
*People ex rel. Van Linda* v. *Warden, etc.*, 86 App. Div. 626, affirmed.
(Submitted October 19, 1903; decided November 10, 1903.)

APPEALS from orders of the Appellate Division of the Supreme Court in the first judicial department, entered July

18, 1903, which affirmed orders of Special Term dismissing writs of habeas corpus and certiorari and remanding relators to custody.

*I. Henry Harris* and *Leon Kronfeld* for appellants.

*William Travers Jerome* (*Arthur C. Train* and *Henry G. Gray* of counsel) for respondents.

Orders affirmed; no opinion.

Concur: GRAY, HAIGHT, MARTIN, VANN, CULLEN and WERNER, JJ.

PARKER, Ch. J. (dissenting). There is evidence tending to show that relator exacted more than 6% interest as the condition of making a loan of $225 to complainant. Complainant neither offered nor gave security for the loan. The question presented to this court is whether a loan made under such circumstances constitutes a misdemeanor under section 378, Penal Code. My associates are of the opinion that it does. While I dissent from that view, I admit that the section standing by itself justifies it. Indeed I think the concession is fairly called for that a natural and ordinary reading of the section, without having in mind other statutes and the circumstances attending the amendment of the section in 1895, would lead to the conclusion that the section makes the loan of money without security at a usurious rate of interest a misdemeanor.

. Courts do not, however, always construe a statute according to its strict letter. It is a cardinal principle of construction, often and wisely employed, that statutes should be construed according to the intent of the law-making power, and to that end the letter must give way. As this court says in *Delafield* v. *Brady* (108 N. Y. 524, 529): " Statutes framed in general terms frequently embrace things which are not within the intent of the law makers, and sometimes things within such intent are not within the letter. Hence, in construing statutes, it has frequently been held that a thing which is within the letter of a statute is not within the statute unless it be within the intent of the law makers." The court cites in support of such proposition a number of authorities

in this state, among them *L. S. & M. S. Ry. Co.* v. *Roach* (80 N. Y. 339, 344) in which the court says: " It cannot be doubted that the law makers did not intend that this law should be applied in such cases; and yet they are within the letter of the law. The law makers cannot always foresee all the possible applications of the general language they use; and it frequently becomes the duty of the courts in construing statutes to limit their operation, so that they shall not produce absurd, unjust or inconvenient results not contemplated or intended. A case may be within the letter of the law and yet not within the intent of the law makers; and in such a case a limitation or exception must be implied."

It is true that as the section stood prior to the act of 1895 the taking under any circumstances of a greater interest than that allowed by law constituted a misdemeanor,. and it was made so by chapter 676, Laws 1881. (Penal Code.) But very shortly the legislature began to create exceptions, presumably because it was discovered that the statute injured those it was intended to benefit, and that economically considered it was framed on anti-business principles, without having behind it the power to make business principles give way.

Rates of interest in the business world are at all times affected by the character of the security. Money may be borrowed with government bonds as collateral at half the legal rate when a loan upon other securities less marketable, and having something of a speculative character, will call for the full legal rate. So, too, money may be borrowed upon a bond secured by a mortgage on marketable real estate for less than half its value at 4% or less, when 5% or 6% will be required if so large a loan be applied for as will approximate the full value of the real estate, and this is so because the element of risk as to some part of the investment is introduced by the necessity for a greater loan. And whenever that element enters, the more conservative financial institutions and individuals refuse to make a loan, and those who are willing to take something of a risk demand extra compensation for it, and if they cannot secure it the loan will not be made.

The person who desires to borrow having no personal property to offer as collateral security, or real estate to mortgage,

finds it difficult to borrow, however much he may need money, and however well intentioned and honest he may be, because there is in his case the possibility that sickness may postpone the payment of the loan, or death make its collection impossible. And in such case the risk of a loan is very considerable, and men of means will generally refuse to take the chances unless they receive compensation for the risk. A statute, therefore, which subjects a man to fine or imprisonment, or both, for accepting more than 6% interest naturally operates, in times at least when rates of money are ruling high, to deprive the man without securities to pledge of an opportunity to borrow money, however pressing may be the necessity for it, whether caused by illness in his family or impending disaster which could be averted by the money which he would borrow, even should its repayment with interest require a very substantial part of all his possible earnings for a considerable period in the future. A statute accomplishing such a result should be entitled, " An act to prevent a man without means from borrowing money." This statute should not be so construed as to accomplish such a result if from an examination of it in the light of other statutes, and the circumstances surrounding their enactment, it is apparent that the legislature intended otherwise.

Now it seems that, as has already been suggested, almost immediately after the enactment of section 378, Penal Code, in 1881, it was discovered by those charged with the responsibility of legislation that the section was too drastic, and the. year following an exception to the general law was created by what is known as the " Demand Loan Act " (Laws 1882, ch. 257), entitled "An act in relation to advances of money upon warehouse receipts, bills of lading, certificates of stock, certificates of deposit and other negotiable instruments." It provided in effect that where moneys were advanced payable on demand in an amount more than $5,000, with securities of the kind suggested in the title pledged as collateral for such payment, it should be lawful to receive as compensation for the loan any sum agreed upon in writing by the parties.

Why it should then be insisted that a man without any collateral whatever to pledge should not be permitted to compen-

sate one who should advance to him money at any rate agreed upon between them in writing is difficult of comprehension. Certainly it would seem that he would find it much more difficult to secure a loan of money than the one with good collateral to pledge.

In 1883 another exception to the general usury law was created by section 7 of what is known as the "Pawnbrokers' Act" (Laws 1883, ch. 339).

These statutes have no direct bearing upon the question of the construction to be given to the section in question, and are referred to only because they show the tendency to relieve certain parties from the drastic effects of the general usury law. But when section 378, Penal Code, was so amended by ch. 72, Laws 1895, as to present the question we now have before us — Whether by it the legislature intended to so modify the section as that the loan of money at a usurious rate of interest when not secured by certain prohibited personalty should not constitute a misdemeanor? — chapter 326, Laws 1895, was also enacted creating another exception to the general usury law in favor of certain corporations loaning not more than $200 at specified rates of interest for a certain limited period of time. Section 5 of that act reads as follows:

"In any such county no person or corporation, other than corporations organized pursuant to this act, shall, directly or indirectly, charge or receive any interest, discount or consideration greater than at the rate of six per cent per annum upon the loan, use or forbearance of money, goods or things in action less than two hundred dollars in amount or value, or upon the loan, use or sale of personal credit in any wise, where there is taken for such loan, use or sale of personal credit any security upon any household furniture, apparatus or appliances, sewing machine, plate or silverware in actual use, tools or implements of trade, wearing apparel or jewelry. The foregoing prohibition shall apply to any person who, as security for any such loan, use or forbearance of money, or for any such loan, use or sale of personal credit as aforesaid, makes a pretended purchase of property from any person and permits the owner or pledgor to retain the possession thereof, or who, by any device or pretense of charging for his services

or otherwise, seeks to obtain a larger compensation in any case hereinbefore provided for. Any person, and the several officers of any corporation, who shall violate the foregoing prohibition, shall be guilty of a misdemeanor, and upon proof of such fact the debt shall be discharged and the security shall be void. But this section shall not apply to licensed pawn-brokers, making loans upon the actual and permanent deposit of personal property as security; nor shall this section affect in any way the validity or legality of any loan of money or credit exceeding two hundred dollars in amount."

It will be noted that this section prohibits the taking of a greater rate of interest than 6% per annum " upon the loan, use or forbearance of money, goods or things in action less than two hundred dollars in amount or value, or upon the loan, use or sale of personal credit in any wise, where there is taken *for such loan, use or sale of personal credit any security* upon any household furniture, apparatus or appli-ances, sewing machine, plate or silverware in actual use, tools or implements of trade, wearing apparel or jewelry." By this section then neither the loan, use nor sale of personal credit without security at a greater rate of interest than 6% per annum is prohibited.

Now turning to section 378, Penal Code, which was *amended* the same year the act from which we have quoted was *passed* — by which there is added to section 378 language never there before, either in substance or spirit, and which language added is almost identical with the language found in section 5 already quoted — we find that it is capable of such a con-struction as makes a difference between " loan or forbearance of money " and the " use or sale of personal credit," in that a loan at a usurious rate, whether the prohibited security be taken or not, constitutes a misdemeanor, while the use or sale of personal credit does not unless secured " upon any house-hold furniture, sewing machine, plate or silverware in actual use, tools or implements of trade, wearing apparel or jewelry."

No good reason has been advanced — nor do I think can be — for any such distinction, and that the legislature saw no reason for the distinction is evidenced by section 5 of the Corporation Loan Law, which, as we have seen, places both

upon the same footing. The legislature attempted to amend section 378, as it seems to me, so that it should harmonize with the letter and the spirit of the Corporation Loan Law — which was in process of enactment at the same time, and which called its attention to a direction in which the pledging of certain classes of security for money loaned at a usurious rate could be made to work most disastrously to families in humble financial circumstances — and it provided that a loan or sale of personal credit where articles therein named were taken as security should constitute a misdemeanor, otherwise a usurious loan by such a corporation was not prohibited.

Now, section 378, as it then stood, made it a misdemeanor to loan money at a greater than lawful interest, and the draftsman of the amendment to section 378 — by which it was intended, as it seems to me, very clearly, to harmonize that section with section 5 of the Corporation Loan Law — so prepared it that the section reads as follows :

"A person who, directly or indirectly, receives any interest, discount or consideration upon the loan or forbearance of money, goods or things in action, or upon the loan, use or sale of his personal credit in anywise, where there is taken for such loan, use or sale of personal credit security upon any household furniture, sewing machines, plate or silverware, in actual use, tools or implements of trade, wearing apparel or jewelry, or as security for the loan, use or sale of personal credit as aforesaid, makes a pretended purchase of such property from any person, and permits the pledgor to retain the possession thereof, greater than six per centum per annum, is guilty of a misdemeanor."

It will be seen that the original section was left standing, but before the words "greater than is allowed by statute is guilty of a misdemeanor" the substance of the provisions in section 5 was inserted, and in many substantial respects the phraseology of section 5 was employed, beginning with the words "or upon a loan."

In its reference to pretended purchase of property section 378, as amended, uses the words "or as security for the loan, use or sale of personal credit," while section 5 reads, "as secu-

rity for any such loan, use or forbearance of money, or for any such loan, use or sale of personal credit." This difference presents .an opportunity for so reading the two statutes that the loan of money·shall be placed on a different basis than·the use or sale of personal credit, the Penal Code making it a misdemeanor under all circumstances and section 5 of the other statute only when it is secured in some method by property of. the kind mentioned in the statute. But this, I think, was not the intention of the lawmakers.

The facts to which reference has been made and the inferences of fact fairly deducible therefrom may be summed up as follows: In 1895 the legislature, for the first time, was forcibly impressed with the importance of enabling a man without means to secure a needed loan although a greater than the legal rate of interest must be paid for that purpose, and at the same time to secure his family from the possibility of being subjected to the loss of household necessities in order to satisfy the debt, and a statutory scheme looking to that end was devised, which may have had behind it the intelligent direction and push of philanthropists. Because that proposed enactment, which subsequently ripened into law, found favor, it became necessary to amend the Penal Code so that it should be in accord with the new policy regarding those having necessity for small loans; hence the amendment to section 378, Penal Code, by incorporating therein the substance of the provisions of the new act. The amendment was apparently drawn by a different and less cautious draftsman, and led to an enactment which results in this controversy as to the intent of the legislature. No reason has been presented, nor can there be, for the difference which ·it is contended exists between the two acts. Therefore, it would seem, in the light of all the legislation bearing on the subject, that such difference was due to mistake rather than intention. If that be so, it would follow that we should read the statute as not declaring a person guilty of a misdemeanor who exacts more than the legal rate of interest upon a simple loan of money. As I think it should be so read, I·advise a reversal of the orders appealed from.